IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Newport News Division

BRANDON AARON BURR,

       Plaintiff,

v.                                CIVIL ACTION NO. 4:26cv37

JASON ATKINS, et al.,

       Defendants.

## BRIEF IN SUPPORT OF MOTION TO DISMISS

COMES NOW Kathryn Kryscio, by counsel, and as and for her Brief in Support of Motion to Dismiss, and states the following:

At this stage, the factual statement herein is distilled from the Amended Complaint in obedience to Rule 12(b)(6) of the Federal Rules of Civil Procedure. This recitation should not be construed as and is not intended as a complete or accurate recitation of what, in fact, occurred between the parties in this action as this defendant is bound by the averments contained in the Amended Complaint. That said, it appears that the current action as well as proceedings that have been instituted in Virginia Courts are part of a litigation vendetta against this defendant waged by her ex-husband. For the reasons that follow, this action must be dismissed.

## FACTS

Plaintiff Brandon Aaron Burr is the father of two minor children who have been the subject of custody and visitation proceedings in the Circuit Court for the City of Newport News, Virginia, since 2018. (Amended Complaint ¶¶ 7, 10). Defendant Kathryn Kryscio, formerly Burr, is the children's mother and the former spouse of plaintiff. (*See* ¶ 9).

Defendant Jason Atkins served as the court-appointed Guardian *ad Litem* ("GAL") for the children during the state court proceedings. (¶ 11).

During 2018, custody proceedings were initiated in the Newport News Circuit Court between plaintiff and defendant Kryscio. (¶ 10). As part of those proceedings, the state court appointed defendant Atkins as GAL for the parties' two minor children. (¶ 11). There is no meaningful dispute that Atkins's duty as GAL was to report his recommendation to the Newport News Circuit Court with respect to the bests interests of the Burr children in the ongoing visitation and custody dispute. The Amended Complaint does not aver that Atkins had any custodial or legal control over the Burr children.

By his own admission, on November 12, 2022, plaintiff filed a motion seeking removal of Atkins as GAL based upon concerns with the GAL representing the children's interests and also requested appointment of a substitute GAL. (¶¶ 12, 14). At a hearing on that motion, the Newport News Circuit Court denied the requests and stated that it believed Atkins had represented the interests of the children to the best of his ability. (¶¶ 13–14). During the same hearing, plaintiff raised concerns regarding letters that he alleged were manufactured and submitted to the court, but the court declined to consider that evidence. (¶ 15).

On February 10, 2025, the Newport News Circuit Court entered a final order on defendant Kryscio's motion to amend visitation. (¶ 16). Under the terms of that order, plaintiff's contact with his children was limited to video visitation once per week on Fridays from 6:30 p.m. to 7:15 p.m., totaling forty-five minutes. (¶ 17). The order provided no in-person visitation, no ability to send gifts, and imposed restrictions on the device used for video calls. (¶ 20).

Plaintiff, in an effort to re-litigate the state proceedings despite his assertions that he is not doing so, offers numerous facts germane only to the custody litigation. For example, he claims that:

1. The court acknowledged in the order that the children's therapist had testified on September 12, 2024, and again at the hearing, and had recommended some form of reunification therapy and visitation. (¶¶ 18–19).

2. Despite that testimony, the court imposed the described visitation restrictions. (¶ 20).

3. The order reflects that both Plaintiff and Defendant Kryscio objected on the record. (¶ 21).

4. Plaintiff alleges that the practical effect of the order was a near-total severance of the parent-child relationship. (¶ 22).

5. Plaintiff claims that beginning on or about May 1, 2025, defendant Kryscio denied or obstructed even the limited video visitation permitted under the February 10, 2025 order. (¶ 23). Plaintiff further alleges that the children were not made available for scheduled calls, that internet connectivity was insufficient to sustain video conferences, and that calls were initiated late, further reducing contact time. (¶ 23).

On November 24, 2025, plaintiff filed a Rule to Show Cause in the Circuit Court seeking enforcement of the visitation order and requesting that defendant Kryscio be required to show cause why she should not be held in contempt. (¶ 24). The hearing on that motion was scheduled for March 16, 2026. (¶ 24). Plaintiff states that on March 10, 2026, opposing counsel moved to continue the hearing. (¶ 25). Plaintiff further alleges that

3

his counsel withdrew from representation on March 13, 2026, leaving Plaintiff to proceed *pro se* in the enforcement proceedings. (¶ 26).

Plaintiff alleges that on February 28, 2026, defendant Atkins approached Plaintiff in a grocery store in Newport News, Virginia, and stated that Plaintiff's custody case was "rigged against dad." (¶¶ 27–28). Plaintiff alleges that his partner was present during the encounter and speculates that surveillance footage *may* exist. (¶ 29).

Plaintiff further alleges that defendant Atkins has an extensive disciplinary history with the Virginia State Bar, including public reprimands issued in 2019 and 2022, a license suspension on impairment grounds in 2024, and an administrative suspension in 2025, as well as pending disciplinary proceedings scheduled for hearing in April 2026. (¶¶ 30–31).

Plaintiff generally alleges, without specific factual allegations, that defendant Atkins, while serving as court-appointed GAL, coordinated with defendant Kryscio to manipulate the custody proceedings against plaintiff's interests. (¶ 33). Plaintiff alleges that Atkins aligned his recommendations with defendant Kryscio's litigation positions, failed to investigate allegedly manufactured documents, and supported outcomes that resulted in minimal parental contact. (¶ 33).  All of these issues are items that were able to have been brought to the attention of the Virginia courts.

Plaintiff alleges that this conduct, together with Atkins' alleged statement and disciplinary history, the court's reliance on Atkins' recommendations, and defendant Kryscio's alleged refusal to comply with visitation provisions, evidences a conspiracy to deprive plaintiff of his constitutional rights. (¶¶ 34–36).  Critically missing are facts that would support the existence of an agreement between Atkins and Kryscio.

For the reasons that follow, this action must be dismissed for want of jurisdiction and

failure to state a claim upon which relief may be granted.

## STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 12(b)(1), "[t]he plaintiff has the burden of proving that subject matter jurisdiction exists." *Evans v. B.F. Perkins Co.*, 166 F.3d 642, 647 (4th Cir. 1999). A court should grant a motion to dismiss "only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law." Id. (quoting *Richmond, Fredericksburg & Potomac R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991)).

The principles of law governing the resolution of a motion to dismiss for failing to state a claim upon which relief can be granted are beyond dispute. Specifically, the Court must accept as true all facts pleaded by the plaintiff and construe those facts in the light most favorable to plaintiff. *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984); *Martin Marietta Corp. v. Int'l Telecomm. Satellite Org.*, 991 F.2d 94, 97 (4th Cir. 1992); *Davis v. Hudgins*, 896 F.Supp. 561, 566 (E.D.Va. 1995). The averments in the Second Amended Complaint must be plausible and rise above a merely speculative level to demonstrate a reasonable expectation that the plaintiff is entitled to the relief sought. Plaintiff's Second Amended Complaint fails to provide a set of facts that establish a plausible claim for relief. Within the last few years, the standard for consideration of a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure has undergone considerable refinement. In light of recent Supreme Court authority, a complaint must state "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*,

556 U.S. 678 (2009) (quoting *Bell Atl. Corp. v. Twombley*, 550 U.S. 544, 570 (2007)).  To satisfy this plausibility requirement, the plaintiff's submission must "demonstrate more than a 'sheer possibility that a defendant has acted unlawfully,'" but must make a showing of facts sufficient which, if true, are enough to show that the plaintiff is entitled to relief. *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) (quoting *Iqbal*, 556 U.S. at 678). The mere offering of labels and conclusions in a formulaic pleading is not sufficient, and the district courts are free to discount such insufficient and "unadorned" allegations.  *Id.* In sum, the age of boilerplate complaints that survive simply because the drafter is familiar with the elements of a cause of action has passed, and the well-pleaded facts of a claim will now govern its viability.

Based on this rigorous standard, plaintiff has failed to state a claim upon which relief can be granted.  Plaintiff's pleadings in this case do not rise to the level of stating a plausible cause of action against this defendant so as to survive scrutiny under Rule 12(b)(6).  In the absence of any showing that the plaintiff will be able to articulate a claim against this defendant, this action should and must be dismissed.

**ARGUMENT**

I.      The Rooker-Feldman Doctrine Bars These Claims

This court lacks jurisdiction over this action under the *Rooker-Feldman* doctrine. Federal courts have routinely treated the *Rooker-Feldman* doctrine as jurisdictional, and "[b]ecause the *Rooker-Feldman* doctrine is jurisdictional, [federal courts] are obliged to address it before proceeding further in [their] analysis." *Friedman's, Inc. v. Dunlap*, 290 F.3d 191, 196 (4th Cir. 2001); see also *Am. Reliable Ins. Co. v. Stillwell*, 336 F.3d 311, 316

(4th Cir. 2003); *Brown & Root, Inc. v. Breckenridge*, 211 F.3d 194, 198-99 (4th Cir. 2000); *Jordahl v. Democratic Party of Va.*, 122 F.3d 192, 199 (4th Cir. 1997). Under the *Rooker-Feldman* doctrine, a "party losing in state court is barred from seeking what in substance would be appellate review of the state judgment in a United States district court." *Johnson v. DeGrandy*, 512 U.S. 997, 1005-06. Federal court authority to resolve appeals of a state court judgment rests with the Supreme Court. *See* 28 U.S.C. § 1257(a); *Brown & Root, Inc.*, 211 F.3d at 198-99.  This rule is, admittedly, subject to certain narrow exceptions, for example *habeas corpus*, but none that are applicable here.  *See*, e.g., 28 U.S.C. §2254. As a general rule under the circumstances of this case and those like it, "[a] litigant may not circumvent these jurisdictional mandates by instituting a federal action which, although not styled as an appeal, 'amounts to nothing more than an attempt to seek review of [the state court's] decision by a lower federal court.'" *Stillwell*, 336 F.3d at 316 (quoting *Plyler v. Moore*, 129 F.3d 728, 733 (4th Cir. 1997)). The United States Court of Appeals for the Fourth Circuit has weighed the effect of the doctrine:

> The controlling question in the Rooker-Feldman analysis is whether a party seeks the federal district court to review a state court decision and thus pass upon the merits of that state court decision, not whether the state court judgment is presently subject to reversal or modification. Put another way, if "in order to grant the federal plaintiff the relief sought, the federal court must determine that the state court judgment was erroneously entered or must take action that would render the judgment ineffectual," Rooker-Feldman is implicated.

*Jordahl*, 122 F.3d at 202 (quoting *Ernst v. Child & Youth Servs.*, 108 F.3d 486, 491 (3d Cir. 1997)). The doctrine applies not only to matters directly addressed by the state court, but also to "claims which are 'inextricably intertwined' with state court decisions." *Brown & Root, Inc.*, 211 F.3d at 198 (quoting *District of Columbia Court of Appeals v. Feldman*, 460

7

U.S. 462, 486-87 (1983)).  Where, as here, a plaintiff is claiming that the judgment of the state court is what caused their injury, the *Rooker-Feldman* doctrine applies.  *See Smalley v. Shapiro & Burson, LLP*, 526 Fed. Appx. 231, 236 (4th Cir. 2013)(Kiser, J.) (Recognizing refocus of *Rooker-Feldman* doctrine in *Exxon Mobile Corp. V. Saudi Basic Indus. Corp.*, 544 U.S. 280 (2005)).

Here, the *Rooker-Feldman* doctrine applies to bar the exercise of jurisdiction over the claims in the action since plaintiff is seeking, indirectly, to invalidate the decision of the state courts in the custody and related proceedings before it.  If the underlying trial court and appellate decisions stand, plaintiff cannot proceed as there will not have been any deprivation of rights.  Plaintiff must demonstrate that the prior decisions were wrongfully entered as a condition even potentially to prevail here.  Accordingly, this action necessarily rises or falls based upon a determination that the state judgment is valid.  The *Rooker-Feldman* doctrine prevents exactly this type of *psuedo*-appellate review of state court determinations.  To be sure, plaintiff was certainly free to raise a challenge to the validity of the judgments, but he must do so appropriately in the Courts of the Commonwealth.  He simply did not prevail and is attempting to use this Court as a tool to address his displeasure with the rulings of other courts.  Because plaintiff would have this federal district court declare that a judgment issued by a court of the Commonwealth was wrongfully obtained without any legal basis to do so, plaintiff's claims necessarily seek to invalidate the action of a state court.  This court, thus, lacks jurisdiction over this action.

II.     Plaintiff's Claims Are Untimely.

Plaintiff's Complaint presents a series of allegedly unlawful acts visited upon him;

however, any claim deriving from many of those allegations is untimely under Virginia law, 42 U.S.C.§§1983, 1985.

The law is well settled that the limitations period for claims brought under 42 U.S.C. §1983 are governed by the law of the state in which those claims arose as Congress has not established a federal period of limitations for such claims. *Wilson v. Garcia,* 471 U.S. 261, 276-80 (1985); *Nasim v. Warden, Md. House of Corrections,* 64 F.3d 951, 955 (4th Cir. 1995)(*en banc*); *Lewis v. Richmond City Police, Dep't*, 947 F.2d 733 (4th Cir. 1991); *McCausland v. Mason County Bd. of Education*, 649 F.2d 278, 279 (4th Cir. 1991) (borrowing period from West Virginia law, state statute of limitations for personal injury applies equally to Reconstruction Era Civil Rights claims. Including actions under 42 U.S.C. §§1983, 1985); *Patterson v. American Tobacco Co*, 535 F.2d 257 (4th Cir 1976); *McCrary v. Runyon*, 515 F.2d 1082 (4th Cir 1975); *Demuren v. Old Dominion University*, 33 F.Supp.2d 469 (E.D.Va. 1999). Applying this principle to wrongs alleged to have arisen in this case, Virginia has a two-year statute of limitations on actions for personal injury; Va. Code Ann. §8.01-243(A); *see also Lewis*, 947 F.2d at 735; thus, any action brought pursuant to §§1983 or 1985 must be filed no later than two years after accrual.

Unlike the federal borrowing of the state law limitations period, the question of when a claim under these civil rights laws accrues is an issue singly of federal law. *Nasim*, 64 F.3d at 955; *see also Jersey Heights Neighborhood*, 174 F.3d at 187; *Bireline v. Seagondollar*, 567 F.2d 260 (4th Cir. 1977); *Cox v. Stanton,* 529 F.2d 47, 49 (4th Cir. 1975); *Blackmon v. Perez*, 791 F. Supp. 1086, 1090 (E.D.Va. 1992); *Buntin v. Board of Trustees of Virginia Supplemental Retirement System*, 548 F.Supp. 657, 660 (W.D.Va. 1982). "Under federal law a cause of action accrues when the plaintiff possesses sufficient facts

about the harm done to him that a reasonable inquiry will reveal his cause of action." *Nasim*, 64 F.3d at 955.  Once a plaintiff has information regarding the fact of his injury and who effected it, he has inquiry notice that requires him to undertake an investigation as to the details of his claims; and, "[t]o excuse him from promptly [making inquiry] by postponing the accrual of his claim would undermine the purpose of the limitations statute."  *Id.* (citing and quoting *United States v. Kubrick* , 444 U.S. 111,122-124 (1979)).

A detailed review of the Amended Complaint in this case reveals that plaintiff had more than sufficient information to place him on inquiry notice of the existence of her alleged causes of action as early as November 12, 2022 as he had concerns over the GAL's representation of the Burr children's interests.  Plaintiff's Amended Complaint plainly conveys that he had first hand knowledge of problems with Atkins's GAL service more than two years before the Amended Complaint (or any filing to which these claims may relate back) was filed. Plaintiff had notice of each one of these alleged acts and, as such, his potential causes of action began to accrue on the dates provided in the state law and §1983 and §1985 counts of the Amended Complaint.

As such, these claims must be dismissed as untimely.

III.    Plaintiff's claims under 42 U.S.C. § 1983 fail to state a claim upon which relief may be granted.

Plaintiff's claims under 42 U.S.C. § 1983 fail as a matter of law.  A plaintiff must offer facts that are a short and plain statement of the claim showing that the pleader is entitled

to relief. *See* Fed.RCiv.P. 8(a)(2). For the reasons that follow, Plaintiff has failed to offer a plain statement of plausible facts that entitles the him to relief against this defendant under 42 U.S.C. §1983.

Color of State Law

The failure to offer facts that satisfy fundamental elements of a claim under 42 U.S.C. § 1983 dooms the claim. In particular, a plaintiff must first demonstrate facts that establish a fundamental threshold showing: that this defendant acted under color of state law. Plaintiff offers no facts that establish that this defendant acted under color of state law, nor can he. This defendant is a private citizen acting as a litigant in Virginia domestic relations proceedings.  She is not a state actor in the context of any issue related to this case, although she is employed as an educator by a local school board.  There are limited circumstances under which private citizens face liability under §1983. *See Robinson v. Md. Dep't of the Env't*, 2014 U.S. Dist. LEXIS 67544, *44 (D. Md. May 16, 2014) (citing *DeBauche v. Trani*, 191 F.3d 499, 507 (4th Cir. 1999)). First, when the state has coerced the private actor to commit an act that would be unconstitutional if done by the state. Second, when the state has sought to evade a clear constitutional duty through delegation to a private actor. Third, when the state has delegated a traditionally and exclusively public function to a private actor.  Fourth, when the state has committed an unconstitutional act in the course of enforcing a right of a private citizen. *Id.*  There are no plausible factual allegations that would be sufficient to establish those circumstances.

Plaintiff asserts that the state action requirement is met because defendant Atkins served as GAL for the Burr children in the custody proceedings.  He relies, inappropriately,

on the Supreme Court's decision in *Dennis v. Sparks,* 449 U.S. 24 (1980) where allegations of corruption and bribery connected a sitting judge with a prevailing litigant in a claimed conspiracy. *Id*. at 28-29. Here, there is no dispute in Atkins's role as GAL, he was to advocate for the Burr children. A number of well-reasoned decisions have recognized that a child's guardian *ad litem* is closely analogous to a public defender because his responsibilities are to the child, not to the state or to any other litigant. Those courts have concluded, therefore, that a guardian *ad litem* is not a state actor for purposes of § 1983. *See Kirtley v. Rainey*, 326 F.3d 1088, 1092-96 (9th Cir. 2003); *Meeker v. Kercher*, 782 F.2d 153, 155 (10th Cir. 1986); *Snyder v. Talbot*, 836 F. Supp. 19, 24 (D. Me. 1993); *Serdah v. Edwards*, 2011 U.S. Dist. LEXIS 97422, (W.D.Va. 2011)(distinguishing *Thomas S. v. Morrow*, 781 F.2d 367, 378-79 (4th Cir. 1986) on the grounds that there existed no doubt the guardian there had custody of his ward and authority over him). Here, Atkins was serving the role of advocate, and was thus not acting under color of law in representing to the Court what he perceived to be in the Burr children's best interests. The Burr children were not in his custody or control; instead, he simply made a recommendation to the trial court as to custody and visitation.

In the absence of any action under color of state law, the 1983 claims fail.


Due Process

The heart of Plaintiffs' claims relate to a violation of their Due Process Rights under the Fourteenth Amendment to the United States Constitution. The Due Process Clause of the Fourteenth Amendment provides, at a minimum, three different types of constitutional protections: it incorporates and makes applicable to the states specific

12

protections embodied in the Bill of Rights; it guarantees a right to what has been termed "'substantive due process,' which bars certain arbitrary government actions 'regardless of the fairness of the procedures used to implement them;" and it provides a right to "procedural due process," in providing a constitutionally-required minimum of procedural safeguards in connection with a deprivation of life, liberty or property by the State. *Daniels v. Williams*, 474 U.S. 327, 337 (1986) (Stevens, J., concurring); *see also Temkin v. Frederick County Comm'rs*, 945 F.2d 716, 720 n.4 (4th Cir. 1991), cert. denied, 112 S. Ct. 1172 (Feb. 24, 1992).

Here, plaintiff's Amended Complaint appears to claim a violation of plaintiff's rights but fails to demonstrate a procedural or substantive deficiency. Plaintiff should not be permitted to seek redress from this Court for alleged violations of the Fourteenth Amendments for due process violations where an assertion is made in the Amended Complaint and the record of the Virginia Court reveals that a robust and full opportunity for litigation of claims was afforded plaintiff. The Amended Complaint fails to reveal any meaningful procedural denial or substantive injustice that plaintiff suffered. Instead, his claim against this defendant is based solely upon disappointed expectations following the rulings of the Newport News Circuit Court.

Conspiracy

"[T]o state a claim for civil conspiracy under section 1983, a plaintiff must make something more than a naked assertion of conspiracy between a state action and private parties." *Shooting Point, LLC., v. Cumming*, 243 F.Supp.2d 536, 537 (E.D.Va. 2003)(citing

*Phillips v. Mashburn*, 746 F.2d 782, 785 (11th Cir. 1984).  A Complaint stating a §1983 conspiracy claim must show that the defendants "acted jointly in concert and that some overt act was done in furtherance of the conspiracy which resulted in . . . deprivation of a constitutional right."  *Id.*(quoting *Hinkle v. City of Clarksburg*, 81 F.3d 416, 421 (4th Cir. 1996); *see also Sykes v. James*, 13 F.3d 515, 521 (2d Cir. 1993) *cert denied* 510 U.S. 1240 (1994); *Ryan v. Mary Immaculate Queen Ctr.*, 188 F.3d 857, 860 (7th Cir. 1999); *Scott v. Hern*, 216 F.3d 897, 907 (10th Cir. 2000); *Hunt v. Bennent*, 17 F.3d 1263, 1268 (10th Cir.) *cert. denied* 513 U.S. 832 (1984).

Conspiracy:Joint Action

Here, the Amended Complaint and the record is devoid of any facts that can reasonably be read to support a meeting of the minds among the alleged co-conspirators sufficient to support a claim.  Burr "must do more than simply show that there is some metaphysical doubt as to the material facts."  *Matsushita Elec. Indus. Co.*, 475 U.S. at 586-587 (citing *DeLuca v. Atlantic Refining Co.*, 176 F.2d 421, 423 (2nd Cir. 1949) (L. Hand, J.), cert. denied, 338 U.S. 943 (1950); 10A C. Wright, A. Miller, & M. Kane, <u>*Federal Practice and Procedure*</u> § 2727 (1983); Clark, *Special Problems in Drafting and Interpreting Procedural Codes and Rules*, 3 <u>Vand. L. Rev</u>. 493, 504-505 (1950). *Cf. Sartor v. Arkansas Natural Gas Corp.*, 321 U.S. 620, 627 (1944).  Burr's Amended Complaint does not offer any well-pleaded facts to support the existence of an agreement to act in concert among the defendants against his interests or rights.  There are no statements that were made that would support a finding of joint action or a meeting of the minds.  Rather, Burr necessarily relies on speculation and guesswork to strap inference upon inference to assert a conspiracy that simply does not exist.  Even the alleged statement that the system is rigged

14

against fathers doe not reveal any agreement in that sentiment by this defendant.

Conpiracy: Overt Act

Burr also does not identify any overt act in furtherance of the conspiracy as required, let alone one in which this defendant is alleged to have participated.

IV.     Burr fails to present facts sufficient to support a claim under 42 U.S.C. §1985.

Despite lengthy and conclusory allegations of nefarious intent, plaintiff offers nothing more than rank speculation and conjecture to support his contention that any of the defendants participated in a conspiracy to violate his civil rights.  The Amended Complaint is devoid of a single fact to establish the existence of a conspiracy against Burr.  Under 42 U.S.C. § 1985, a cause of action for conspiracy exists when two or more persons conspire to interfere with an individual's civil rights.  *Lewin v. Cooke*, 95 F. Supp. 2d 513, 525 (E.D. Va. 2000).  To show a § 1985 conspiracy, "a claimant must show an agreement or a meeting of the minds by defendants to violate the claimant's constitutional rights." *Id*. (quoting *Simmons v. Poe*, 47 F.3d 1370, 1377 (4th Cir. 1995)).  Without such a meeting of the minds, the individual acts of two or more defendants cannot amount to a conspiracy. *Brown v. Angelone*, 938 F. Supp. 340, 346 (W.D. Va. 1996) (citing *Murdaugh Volkswagon v. First National Bank*, 639 F.2d 1073 (4th Cir. 1981)).  Because the plaintiff must meet such a high threshold to establish a *prima facie* case under § 1985,  courts often grant motions of dismissal. *Lewin,* at 525 (citing *Davis v. Hudgins*,896 F.Supp. 561, 571 (E.D. Va. 1995)). The Fourth Circuit has "specifically rejected § 1985 claims whenever the purported conspiracy is alleged in a merely conclusory manner in the absence of concrete supporting facts."  *Id*. (citing *Simmons*, 47 F.3d at 1377); *see also Davis*, 896 F. Supp. at 571

("because plaintiff has only put forth broad allegations that do not indicate any actual violation of plaintiff's civil rights, or the existence of any conspiracy, the court grants defendant's motion to dismiss plaintiff's § 1985 claims."); *Alley v. Angelone*, 962 F. Supp. 827, 833 (E.D. Va. 1997) (dismissal of claim pursuant to 42 U.S.C. § 1985 -"plaintiff's vague, conclusory assertions that all the actions of which they complain are part of a vast conspiracy does not sufficiently state a claim under § 1985").

Plaintiff does not offer a single fact to support his conclusory allegations that the defendants entered into a conspiracy to deprive him his civil rights, nor does he offer circumstantial evidence by which the Court can reasonably infer a unity of purpose or common design.  Even in a light most favorable to Burr, the Amended Complaint is devoid of a single fact establishing a meeting of the minds or an agreement between any of the defendants to violate his constitutional rights.  At most, Burr cites unrelated acts allegedly taken by individual defendants without any proof of a nexus, in hopes of raising an inference of a conspiracy, but such "broad, conclusory allegations unsupported by specific facts implicating specific defendants are insufficient to state a claim upon which relief can be granted."  *Proffit v. United States*, 758 F. Supp. 342, 344 (E.D. Va. 1990).  Critically, those cited facts are indistinguishable from facts that would exist with a ruling adverse to Burr.  Mere suspicions are not enough and circumstances of a conspiracy under § 1985 must be pled with particularity, including the "times and places where conspiratorial meetings took place."  *Snow v. County of Henrico*, 1990 WL 270198, *2 (E.D. Va. 1990)(Spencer, J.)(attached).  As in *Snow*, Burr merely cites individual actions, with no specific pleading of discussions, meetings, or correspondence amongst the defendants evincing an agreement to persecute him.  The isolated actions attributed to the individual

16

defendants, without any evidence of a link between any of the defendants, do not give rise to an inference that a conspiracy existed.  *See Abercrombie v. City of Catoosa, Oklahoma*, 896 F.2d 1228 (10th Cir. 1990).  Burr's superficial, conclusory allegations of conspiracy under § 1985 are insufficient as a matter of law; therefore, the Amended Complaint claims of a § 1985 conspiracy must be dismissed.

**CONCLUSION**

For these reasons, this matter should be dismissed, with prejudice.

KATHRYN KRYSCIO

By_____/s/_____
James A. Cales III, Esquire
Virginia State Bar No. 41317
FURNISS, DAVIS, RASHKIND and SAUNDERS, P.C.
6160 Kempsville Circle, Ste 341B
Norfolk, VA 23502
(757) 461-7100
fax: (757) 461-0083
jcales@furnissdavis.com
*Counsel for Kathryn Kryscio*

**CERTIFICATE OF SERVICE**

I hereby certify that a I will file this pleading with the Court ECF filing system which will then issue a true copy of the foregoing by email to all counsel of record on March 27, 2026, and I will mail and email the same to *pro se* parties listed below:

Brandon Aaron Burr
447 Eureka Loop
Newport News, VA 23601
2brandonb@gmail.com

_____/s/_____

James A. Cales III, Esquire
Virginia State Bar No. 41317
FURNISS,   DAVIS,   RASHKIND   and
SAUNDERS, P.C.
6160 Kempsville Circle, Ste 341B
Norfolk, VA 23502
(757) 461-7100
fax: (757) 461-0083
jcales@furnissdavis.com
*Counsel for Kathryn Kryscio*
