IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF VIRGINIA

Newport News Division

BRANDON AARON BURR,

Plaintiff,

v.                                  Civil Action No. 4:26cv37

JASON ATKINS, individually,

KATHRYN KRYSCIO BURR, individually, and

MATTHEW W. HOFFMAN, individually,

Defendants.

**BRIEF IN SUPPORT OF PLAINTIFF'S MOTION FOR APPOINTMENT OF COUNSEL FOR MINOR CHILDREN**

## I. INTRODUCTION

Federal Rule of Civil Procedure 17(c)(2) imposes a mandatory obligation on this Court: where a minor is unrepresented in a federal action, the Court "must appoint a guardian ad litem — or issue another appropriate order — to protect" that minor's interests. This motion invokes that obligation on behalf of two minor children — L.M.B. (age 13, DOB February 5, 2013) and Z.G.B. (age 11, DOB March 26, 2015) — whose independent constitutional rights are directly at issue in this 42 U.S.C. §§ 1983 and 1985(3) civil rights action.

This is not a custody dispute, and this Court is not being asked to review, reverse, or modify any state court order. Plaintiff's claims are directed at the conduct of the Defendants — a court-

appointed guardian ad litem, the children's mother, and a former presiding judge — who are alleged to have conspired to corrupt the very proceedings intended to protect these children's welfare. The injury claimed arises from that conspiracy, not from the state court judgment itself. The children have independent constitutional interests in the integrity of proceedings affecting their familial associations — interests that cannot be adequately represented by their father, who is a named Plaintiff with his own claims, or by their mother, who is a named Defendant.

Under Rule 17(c)(2), the discretionary authority of 28 U.S.C. § 1915(e)(1), and the standards this Circuit established in *Whisenant v. Yuam*, 739 F.2d 160 (4th Cir. 1984), appointment of independent counsel is both mandatory and warranted. The children's own words, their formal complaints filed through independent institutional channels, and corroborating evidence from multiple independent sources demonstrate that their need for representation is genuine, urgent, and legally cognizable.

## II. FACTUAL BACKGROUND

### A. 1,034 Days Without Their Father.

From December 2021 through October 2024 — a period of 1,034 days — L.M.B. and Z.G.B. had zero contact with their father. No visits. No telephone calls. No contact on birthdays or holidays. This severance occurred despite the fact that six independent licensed psychological evaluators examined Plaintiff and found him to pose no risk to his children. Not one evaluator recommended continued separation. The children's own therapist recommended reunification therapy and increased visitation. The custody outcomes bore no rational relationship to the evidence.

When minimal visitation was finally restored, the February 10, 2025 final order restricted Plaintiff to forty-five minutes per week of supervised contact. Beginning in May 2025, Defendant Kryscio began systematically obstructing even this minimal court-ordered contact, canceling sessions, arriving late, and manufacturing pretextual conflicts — conduct that continues to the present.

## B. The Children's Own Therapist Documented the Harm.

The harm to L.M.B. and Z.G.B. is not alleged by their father alone. It is documented in signed, locked therapy session notes from Laura Bronstein, LCSW — the therapist Defendant Kryscio herself selected for L.M.B. Those notes reflect that L.M.B. told his therapist that his mother "tries to keep him from his dad" and "wants him to not see his Dad." L.M.B. cried in therapy sessions. After inadvertently encountering his father in a store, L.M.B.'s behavior deteriorated so severely that he received disciplinary action at school — an event documented by Kryscio's own chosen therapist. These records are available for in camera review upon request.

## C. The Children Themselves Have Spoken.

On March 28, 2026, L.M.B. (age 13) and Z.G.B. (age 11) each filed formal complaints with the York County School Division Superintendent under Virginia Regulation 8VAC20-23-720. The complaints were submitted through Virginia's official educational complaint process — a formal institutional channel independent of any custody proceeding and inaccessible to Plaintiff as a mechanism for directing their content. They were written in the children's own words and signed in their own names. They are attached to the Motion as Exhibit A.

L.M.B. wrote, in part:

> *"I should be allowed to have a relationship with my dad. Nobody asked me what I wanted. Nobody let me talk. . . . I even talked to a judge about seeing my dad. I went to the judge's office and told him what I wanted. But I still did not get to see my dad. And now that judge is gone because what he was doing was not right. So I told a judge how I felt and it did not matter. That is what it has been like for me."*

> *"I am asking that someone give me and my brother our own lawyer — someone who works for us. Not for mom. Not for dad. Not for the school. We deserve our own voice."*

Z.G.B. wrote, in part:

*"I should be allowed to love my dad. I should be allowed to see him. I should be allowed to say I miss him without being scared. . . . I am scared to talk about this. My mom works at this school. She knows the people here. I do not want to get in trouble for saying this. I need to talk to someone my mom does not know. Someone who is not from this school. Someone safe."*

*"I wish me and my brother could have our own lawyer. Someone who works for us. Not for mom. Not for dad. Not for the school. Just for us."*

L.M.B.'s complaint, authored at age 13, reflects age-appropriate specificity, first-person detail, and language consistent with the observations documented by his own therapist in locked session notes. Z.G.B.'s complaint, authored at age 11, expresses fears — specifically, fear of retaliation for speaking about his father in an environment controlled by his mother — that are independently corroborated by the therapy records. These are not legal arguments presented in a child's name; they are children's own accounts of their experiences, submitted to an institution with no stake in the parents' litigation, and consistent with observations made independently by licensed professionals.

**D. Multiple Independent Sources Corroborate the Corruption of the Proceedings.**

The allegation that the custody proceedings were corrupted does not rest on any single piece of evidence. It is supported by a constellation of independent sources:

First, the presiding state court judge, Matthew W. Hoffman, was recused on March 25, 2026, under Canon 1(D) of the Virginia Canons of Judicial Conduct — which addresses actual impropriety or its appearance. In connection with his recusal, Judge Hoffman vacated his own March 23, 2026 order. A sitting judge's voluntary self-recusal for actual impropriety is not a routine procedural event; it is an independent institutional acknowledgment that something went wrong.

Second, Defendant Jason Atkins served as court-appointed Guardian ad Litem for L.M.B. and Z.G.B. throughout the underlying Newport News Circuit Court custody proceedings (Case Nos. CL1801756F-15; CL2301756H-01; CL2501756H-01). Atkins has been the subject of five Virginia State Bar disciplinary actions: reprimands in 2019 and 2022, and suspensions in 2024 and 2025. Four additional dockets are scheduled for hearing in April 2026. These are independent institutional proceedings reflecting a pattern of professional misconduct.

Third, Atkins's November 11, 2022 GAL Report — submitted to the court at 11:53 PM, self-described as a "Draft" — is itself evidence of bias. In that report, Atkins: (1) threatened to lien Plaintiff's home, writing "I will own the 'Burr-Boys Beach-House'"; (2) diagnosed Plaintiff with "unpredictable-madness" and a "mental-breakdown/episode" in a follow-up communication to the court on November 12, 2022, without any medical qualification; and (3) produced recommendations consistently aligned with Defendant Kryscio's positions, contrary to the findings of six independent evaluators.

Fourth, on February 28, 2026, Atkins approached Plaintiff at a Harris Teeter grocery store at 12404 Warwick Blvd, Newport News, Virginia. In the presence of a witness, Heleille Soleille, Atkins made an unprompted admission that the custody case had been "rigged against dad." Plaintiff served a formal litigation hold notice on Harris Teeter on March 18, 2026, preserving all interior and exterior surveillance footage from February 28, 2026. This admission is offered not as conclusive proof of conspiracy, but as corroborating evidence consistent with the pattern established by the independent institutional evidence described above. At the colorability stage, it supports a plausible, non-frivolous basis for the conspiracy claim.

Fifth, the children's own formal complaints — filed independently through the educational complaint process — provide a first-person account of the consequences of the alleged corruption, consistent with contemporaneous therapy records.

Taken together, these independent sources of evidence present a non-frivolous, colorable basis for the § 1983 and § 1985(3) claims.

**E. L.M.B. and Z.G.B. Also Filed Formal Student Complaints with York County Schools.**

On March 28, 2026, L.M.B. and Z.G.B. filed formal complaints with the York County School Division under Virginia Regulation 8VAC20-23-720. Their complaints detail the emotional harm they have suffered, describe the environment of fear in which they have been raised, and request that the school division take action to address their mother's conduct as a YCSD teacher. They also contain a formal FERPA request for access to their educational records. These materials are attached to the Motion as Exhibit A.

**F. A Note on Jurisdiction.**

The claims presented in this action are not a collateral attack on the state court's custody orders. The *Rooker-Feldman* doctrine bars federal district courts from reviewing and rejecting state court judgments on the theory that those judgments were wrong. *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005). But where a plaintiff's injury arises from the defendants' conduct — not from the state court's ruling — the doctrine has no application. See *Davani v. Va. Dep't of Transp.*, 434 F.3d 712, 719 (4th Cir. 2006). The § 1983 and § 1985(3) claims here target the alleged conspiracy that corrupted the proceedings — the coordination between the GAL and a party, the biased recommendations contrary to independent evaluators' findings, and the presiding judge's conduct that led to his own recusal for actual impropriety. The injury is the conspiracy itself, not the resulting orders. A ruling in Plaintiff's favor would establish civil liability for the Defendants' conduct; it would not require this Court to declare the state court's orders void or unenforceable.

*Younger* abstention is equally inapplicable. The Supreme Court has confined *Younger* to three exceptional categories: ongoing state criminal prosecutions, certain civil enforcement proceedings,

and civil proceedings uniquely in furtherance of the state courts' ability to perform their judicial functions. *Sprint Communications, Inc. v. Jacobs*, 571 U.S. 69, 78 (2013). None applies here. The February 10, 2025 final custody order is a concluded proceeding, not an ongoing one. This federal action does not seek to enjoin or interfere with any pending state proceeding; it seeks damages for completed constitutional violations.

The foregoing facts are presented not as proof of ultimate liability, but to demonstrate that the claims advanced in this action are genuine, non-frivolous, and legally cognizable — the threshold the Court must assess in determining whether Rule 17(c)(2) is triggered and whether exceptional circumstances warrant appointment of counsel under *Whisenant*.

### III. LEGAL STANDARD

Two independent legal authorities authorize — and in one case mandate — the appointment of counsel for the minor children.

Fed. R. Civ. P. 17(c)(2) is mandatory: "[t]he court must appoint a guardian ad litem — or issue another appropriate order — to protect a minor or incompetent person who is unrepresented in an action." (Emphasis added.) This is not discretionary. Where, as here, a minor has independent claims and is unrepresented, the Court's obligation to act is mandatory.

28 U.S.C. § 1915(e)(1) provides that "[t]he court may request an attorney to represent any person unable to afford counsel." The Fourth Circuit has identified four factors relevant to this determination: (1) whether the plaintiff's claim has merit; (2) the complexity of the legal issues; (3) the ability of the unrepresented party to present the case; and (4) whether the case will require investigation and expert witnesses. *Whisenant v. Yuam*, 739 F.2d 160, 163 (4th Cir. 1984). All four factors weigh decisively in favor of appointment here.

While the Fourth Circuit has not addressed Rule 17(c)(2)'s application in this precise context, the Seventh Circuit's decision in *T.W. by Enk v. Brophy*, 124 F.3d 893, 895-96 (7th Cir. 1997),

provides persuasive guidance consistent with Rule 17(c)(2)'s text and purpose, holding that Rule 17 protects minors' interests as a matter of procedural fairness, independent of financial considerations. The mandatory text of Rule 17(c)(2) — which this Circuit has not narrowed — supports the same conclusion.

Plaintiff acknowledges that L.M.B. and Z.G.B. are not presently parties to this action and have not filed an application to proceed in forma pauperis. Rule 17(c)(2) does not condition the Court's obligation on the minor's status as a party — it requires the Court to protect any minor "who is unrepresented in an action" where that minor's interests are at stake. The children's independent constitutional interests are directly at issue in this proceeding regardless of their formal party status, and Rule 17(c)(2) provides the primary and independently sufficient basis for appointment. Section 1915(e)(1) provides a supplemental mechanism that would become operative upon the children's joinder as plaintiffs, and this Court's authority to appoint counsel in advance of formal joinder is consistent with the broad equitable powers inherent in the federal judiciary. See *Marbury v. Madison*, 5 U.S. (1 Cranch) 137, 163 (1803) ("The very essence of civil liberty certainly consists in the right of every individual to claim the protection of the laws, whenever he receives an injury.").

### IV. ARGUMENT

#### A. Rule 17(c)(2) Imposes a Mandatory, Affirmative Obligation on This Court.

Fed. R. Civ. P. 17(c)(2) provides: "The court must appoint a guardian ad litem — or issue another appropriate order — to protect a minor or incompetent person who is unrepresented in an action." (Emphasis added.) The operative word is "must." This provision imposes an affirmative, mandatory obligation on the Court — it does not permit the Court to decline to act where an unrepresented minor has independent claims.

The Court's obligation under Rule 17(c)(2) is not contingent on the children's formal status as parties. The rule protects minors whose interests are "in an action" — a phrase that encompasses any minor with cognizable interests at stake in the proceeding, not merely those who have been formally joined. To read Rule 17(c)(2) as limited to existing parties would create an absurd result: minors who need representation the most — those who cannot initiate the procedural steps necessary to become parties — would be the very minors left unprotected. The rule is properly read as functional, not formalistic.

L.M.B. and Z.G.B. are minors. They have independent Fourteenth Amendment claims arising from this action. They are unrepresented. Their father is a named Plaintiff with his own claims and cannot adequately represent their independent interests. Their mother is a named Defendant. Under the plain text of Rule 17(c)(2), this Court must either appoint a guardian ad litem or issue another appropriate order to protect their interests. This Court's obligation is independently sufficient to grant the requested relief regardless of the § 1915(e)(1) analysis.

## B. Exceptional Circumstances Under 28 U.S.C. § 1915(e)(1) and *Whisenant* Independently Support Appointment.

Even if Rule 17(c)(2) did not compel appointment, the discretionary authority of § 1915(e)(1) and the *Whisenant* factors independently support it.

### 1. The Minor Children Have Independent, Meritorious Constitutional Claims.

The Supreme Court has recognized that the parent-child relationship is protected by a fundamental liberty interest under the Fourteenth Amendment. *Troxel v. Granville*, 530 U.S. 57, 65 (2000); *Santosky v. Kramer*, 455 U.S. 745, 753-54 (1982). While *Troxel* and *Santosky* addressed the parental side of this interest, a majority of federal circuits have recognized that this liberty interest runs in both directions — belonging independently to parent and child alike. See *Smith v. City of Fontana*, 818 F.2d 1411, 1418 (9th Cir. 1987) ("The constitutional interest in familial

companionship and society logically extends to protect children from unwarranted state interference with their relationships with their parents."); *Berman v. Young*, 291 F.3d 976, 983 (7th Cir. 2002); *Hodorowski v. Ray*, 844 F.2d 1210, 1216 (5th Cir. 1988). Although the Fourth Circuit has not squarely addressed the issue, the weight of authority — and the logic of the familial liberty interest itself — supports recognition of the children's independent constitutional stake in their relationship with their father.

L.M.B. and Z.G.B. were deprived of any contact with their father for 1,034 consecutive days. This de facto termination of the parent-child relationship occurred without any finding of unfitness and contrary to the unanimous conclusions of six independent licensed evaluators. The near-total elimination of the children's relationship with their father, allegedly engineered through a corrupted GAL process, biased judicial proceedings, and systematic post-order obstruction, constitutes a direct violation of their protected liberty interest under the Fourteenth Amendment.

These claims are independent of their father's claims, though they arise from the same core facts. L.M.B. and Z.G.B. are not derivative claimants. They are constitutional victims in their own right. They cannot, however, prosecute those claims. Under 28 U.S.C. § 1654, minor children may not appear pro se in federal court and must be represented by licensed counsel. *Myers v. Loudoun Cty. Pub. Schs.*, 418 F.3d 395, 401 (4th Cir. 2005). Without appointed counsel, these children have no mechanism to vindicate their constitutional rights in this proceeding.

Defendants will likely raise immunity defenses. Defendant Atkins may assert quasi-judicial immunity, and Defendant Hoffman may assert absolute judicial immunity. These defenses do not defeat colorability at this stage. Quasi-judicial immunity protects the adjudicatory function — a GAL's in-court reports and testimony — but does not extend to out-of-court conspiratorial conduct or deliberate misrepresentations made for the purpose of corrupting the proceedings the GAL was appointed to assist. See *Butz v. Economou*, 438 U.S. 478 (1978). Even if Judge Hoffman ultimately prevails on absolute judicial immunity grounds — a question not before this Court on the present

motion — that immunity does not insulate his alleged coconspirators from § 1983 liability. *Dennis v. Sparks*, 449 U.S. 24, 27-28 (1980). The § 1985(3) conspiracy claim survives regardless of the outcome of Hoffman's immunity defense.

The merit of these claims is demonstrated by objective, corroborated evidence already in the record: six evaluators who cleared Plaintiff, therapy notes documenting harm caused by separation, a sitting judge's self-recusal for actual impropriety, five VSB disciplinary actions against the GAL, the children's own independently filed institutional complaints, and the GAL's corroborating admission. The *Whisenant* merit factor weighs strongly in favor of appointment.

## 2. The Legal Issues Are Complex and Require Professional Navigation.

This case presents complex and overlapping questions of federal civil rights law. The Second Amended Complaint asserts five counts under 42 U.S.C. §§ 1983 and 1985(3), including substantive and procedural due process claims, a multi-party conspiracy theory, class-based animus under § 1985(3), and a judicial misconduct count against Defendant Hoffman. The case involves contested doctrines including: state actor analysis under *West v. Atkins*, 487 U.S. 42 (1988); private coconspirator liability under *Dennis v. Sparks*, 449 U.S. 24 (1980); the Rooker-Feldman doctrine and its limitations under *Exxon Mobil Corp. v. Saudi Basic Industries Corp.*, 544 U.S. 280 (2005); Younger abstention; the continuing violation doctrine; quasi-judicial immunity; and absolute judicial immunity.

The § 1985(3) conspiracy claim requires proof of "some racial, or perhaps otherwise class-based, invidiously discriminatory animus." *Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971). The Second Amended Complaint identifies the protected class as children subjected to custody proceedings who are denied access to a parent through judicial corruption — a class defined not by economic activity, cf. *United Brotherhood of Carpenters v. Scott*, 463 U.S. 825 (1983), but by the systematic deprivation of a fundamental constitutional right. Whether this class satisfies Griffin's "otherwise

class-based" requirement is a merits question to be resolved on full briefing; at this stage, it is sufficient that the claim is non-frivolous and colorable.

Adding the minor children as plaintiffs introduces additional legal complexity: the scope of children's independent Fourteenth Amendment rights under *Troxel*; standing analysis for minor claimants; the procedural mechanism for adding minor plaintiffs through amendment under Fed. R. Civ. P. 15; and the appointment and supervisory role of a guardian ad litem or counsel under Rule 17. This is not a case a thirteen-year-old or an eleven-year-old can navigate.

### 3. The Children Cannot Protect Their Own Interests — They Have Said So Themselves.

The third *Whisenant* factor — the ability of the unrepresented party to present the case — is answered definitively by the children's own words. L.M.B. is thirteen years old. Z.G.B. is eleven. They are minors. They are incapable of prosecuting federal civil rights litigation.

But beyond the obvious incapacity of minors to litigate, the record here reveals something more troubling: these children have been living in an environment in which they fear speaking their own minds. L.M.B. described having to wait for his mother to leave the room before he could tell his therapist that he missed his father. Z.G.B. described being "scared" to speak at his school because his mother "knows the people here" and he "does not want to get in trouble." He specifically said he needs "someone safe" who his mother does not know.

A child who has been taught, through years of experience, that expressing love for a parent carries consequences cannot be expected to act as his own advocate in federal court. The children need independent counsel who works for them — not for their father, not for their mother, not for this Court's convenience. They have said exactly this in writing.

### C. The Question of Compensation Is Appropriately Left to This Court's Discretion.

Plaintiff does not seek to dictate the terms of any appointment or to resolve the question of attorney compensation at this stage. Plaintiff respectfully notes that:

- 42 U.S.C. § 1988 authorizes an award of attorney's fees to prevailing parties in § 1983 and § 1985(3) actions, and if the children's claims succeed, fee-shifting against Defendants is available;

- This Court retains broad inherent equitable authority to allocate the costs of appointed counsel as justice requires, including against parties whose conduct necessitated the appointment;

- The children's need for representation is independent of and should not be delayed by the question of fee allocation; and

- Plaintiff specifically does not ask the Court to order him to pay appointed counsel's fees at this time, but respectfully submits that the Court is in the best position to determine the appropriate arrangement once counsel is identified and the scope of representation is defined.

## D. The Exhibit A Packet Provides Direct Evidence of the Children's Need.

Exhibit A to the Motion is a thirty-two-page packet containing: (1) L.M.B.'s formal student complaint to York County School Division Superintendent (March 28, 2026); (2) Z.G.B.'s formal student complaint to York County School Division Superintendent (March 28, 2026); (3) a formal FERPA request for both children's educational records; (4) a formal complaint regarding Defendant Kryscio's conduct as a YCSD teacher; and (5) an executive summary of the relevant facts.

Among the specific facts documented in the children's own complaints:

- L.M.B. described a pattern of having to suppress his feelings about his father in his mother's presence, including in therapy sessions that his mother supervised.

- L.M.B. described telling the presiding judge in chambers that he wanted to see his father, being ignored, and then watching that judge be removed for misconduct.

- Z.G.B. described living in fear of retaliation for speaking about his father, specifically because his mother is a teacher at his school and "knows the people here."

- Both children independently requested legal representation specifically described as working for them — not for either parent, not for the school — in nearly identical terms.

These facts establish that the children are not incapable of forming views about their situation — they are capable, and their views are clear. What they lack is a legal vehicle through which to assert them.

## V. CONCLUSION

L.M.B. and Z.G.B. are minors with independent constitutional rights at issue in this proceeding. They did not choose this litigation and they cannot navigate it alone. Federal Rule of Civil Procedure 17(c)(2) exists for exactly this moment. The rule uses mandatory language: the Court must act to protect unrepresented minors with independent claims. Section 1915(e)(1) provides the mechanism for appointing counsel. The *Whisenant* factors — merit, complexity, inability to self-represent, and need for investigation — all point in the same direction.

Plaintiff respectfully requests that this Court:

1. Appoint independent counsel to represent the interests of L.M.B. and Z.G.B. in this proceeding pursuant to Fed. R. Civ. P. 17(c)(2) and/or 28 U.S.C. § 1915(e)(1);

2. Authorize appointed counsel, in the exercise of professional judgment and following consultation with the children, to take such further procedural steps as counsel determines to be in the children's interests, including but not limited to moving to join the children as plaintiffs pursuant to Fed. R. Civ. P. 15 and 17; and

3. Grant such other and further relief as this Court deems just and proper.

Respectfully submitted,

_____

Brandon Aaron Burr, PMHNP-BC, FNP-BC

Pro Se Plaintiff

447 Eureka Loop

Newport News, Virginia 23601

Telephone: 941-962-8144

Email: 2brandonb@gmail.com

Date: _____

---

## <u>VERIFICATION</u>

I, Brandon Aaron Burr, declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that the factual statements contained in the foregoing Brief in Support of Plaintiff's Motion for Appointment of Counsel for Minor Children are true and correct to the best of my knowledge, information, and belief.


_____

Brandon Aaron Burr, PMHNP-BC, FNP-BC

Pro Se Plaintiff


Date: _____

## GHOSTWRITING CERTIFICATION

Pursuant to Eastern District of Virginia Local Civil Rule 83.1(N), the undersigned Plaintiff certifies that no attorney has drafted or assisted in drafting the foregoing Brief in Support of Plaintiff's Motion for Appointment of Counsel for Minor Children. This document was prepared by the Plaintiff, pro se, No attorney-client relationship exists between the Plaintiff and any attorney in connection with this filing.

_____

Brandon Aaron Burr, PMHNP-BC, FNP-BC

Pro Se Plaintiff

Date: _____

## CERTIFICATE OF SERVICE

I hereby certify that on this _____ day of _____, 2026, I caused a true and correct copy of the foregoing Brief in Support of Plaintiff's Motion for Appointment of Counsel for Minor Children to be served upon the following by United States mail, first class, postage prepaid, and by electronic mail where counsel's email address is known:

Jason Atkins

Jones, Blechman, Woltz & Kelly, P.C.

701 Town Center Drive, Suite 800

Newport News, Virginia 23606


James A. Cales III

Furniss, Davis, Rashkind and Saunders, P.C.

Counsel for Defendant Kathryn Kryscio Burr


Matthew W. Hoffman

2500 Washington Avenue

Newport News, Virginia 23607


_____

Brandon Aaron Burr